IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD THOMAS CABLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-0593 |
| ) | |
| UNITED STAETS OF AMERICA, ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is the *pro se* petition filed by Donald Cable for relief under 28 U.S.C. § 2255 from a sentence of life without possibility of release imposed by this court in 1998 in criminal case number 3:96-cr-00004 (Civil Doc. No. 1),[1] for crimes committed in 1995. Now, more than eleven years after his sentencing, Cable has filed his petition alleging that his attorneys were ineffective for failing to present potentially mitigating evidence at sentencing and for failing to file an appeal of the sentence after Cable allegedly directed them to do so. The United States has filed a response to Cable's motion, as well as its own related Motion to Dismiss Post-Conviction Claims (Civ. Doc. No. 3).

In the underlying criminal action, Cable was indicted for, among other things, conspiring to cross state lines to commit murder and for actually committing the murder of a federal witness, in violation of 18 U.S.C. §§ 1958(a) and 1512(a)(1). (Crim. Doc. No. 52 and Civ. Doc. No. 1-2 (Second Superseding Indictment, Counts One and Three).) Because the crimes resulted in the death of the federal witness, the applicable statutes provided that, in the event the defendant was found guilty, only two sentences were possible: the death penalty or life imprisonment. The Government gave notice that it intended to seek the death penalty. (Crim. Doc. No. 152 (Notice of Intent to Seek Death Penalty).)

Cable subsequently pleaded guilty to the above-referenced capital offenses. (Crim. Doc. No. 200 (Clerk's Resume of Hearing).) On July 9, 1998, he signed and presented to this Court a written Petition to Enter a Plea of Guilty indicating that he was represented by attorneys Thomas F. Bloom and William P. Redick, Jr., that he had received a copy of the Second Superseding Indictment; and that he had read and thoroughly discussed it with his attorneys and understood the accusations made against him in that

---

[1] Docket entries pertaining to the instant post-conviction civil action will be referenced as "Civ. Doc. No. __"; entries pertaining to the underlying criminal case will be referenced as "Crim. Doc. No. __."

document. (Crim. Doc. No. 201, at 1.) In addition, Cable represented that he "understood that the penalty for the offenses for which [he was] charged is life without the possibility of parole or death," and that, similarly, the "guideline range in [his] case should be from life to death." (*Id.* at 1, 2.) Cable further represented in the Petition to Enter a Plea of Guilty that his lawyers had done a good job representing him and that he was completely satisfied with their representation of him during the criminal proceedings:

> My lawyer has done all that anyone could do to counsel and assist me, and I understand the proceedings in this case against me. My lawyer has done all the investigation and research in this case that I have asked her/him to do and I am satisfied with her/his representation to this point.

(*Id.* at 4.) The document also indicates that Cable, fully understanding his right to plead "not guilty" and the consequences of entering a plea of "guilty," wished to plead guilty and requested that the Court accept his plea of guilty to Counts One (conspiracy to commit murder in and affecting interstate commerce) and Three (murder of a federal witness) of the Second Superseding Indictment.

Cable's entry of a guilty plea as to two of the charges in the indictment was made pursuant to a Plea Agreement between him and the Government pursuant to which the Government agreed to dismiss Counts Two, Four and Five of the Indictment, and agreed not to exercise its right to request the death penalty. Instead, the Government joined with the defendant in requesting that the Court impose the alternate sentence of life imprisonment without possibility of release. For his part, Cable agreed to waive his right to appeal or to collaterally attack his conviction or sentence "except for issues based on prosecutorial misconduct and ineffective assistance of counsel." (*Id.*) Finally, Cable represented that he offered his guilty plea freely and voluntarily and of his own accord and that he was not under the influence of drugs or alcohol. He signed the Petition in open court, in the presence of the undersigned, under the penalty of perjury. (*Id.*)

Prior to accepting Cable's guilty plea, the undersigned examined him in open court. After being sworn in, Cable reconfirmed the statements made in the plea petition, specifically including the representations that he had read and understood the plea agreement and petition to enter a plea and in fact desired to enter a plea of guilty, and that he had been satisfied with the advice of his lawyers. (Crim. Doc. No. 315, 7/9/1998 Transcript of Proceedings (hereinafter, "Tr.") , 4:16–7:3.) He also indicated that

he understood that the plea agreement called for him to receive a sentence of life without possibility of release, and to waive his right to appeal the sentence:

> Q [by the Court]. Now your plea agreement provides for you to receive a penalty, a sentence of life imprisonment without possibility of release. Do you understand that?
>
> A [by Cable]. Yes, sir.
>
> Q. And knowing that that is what you will receive, do you still wish to plead guilty?
>
> A. Yes, sir.
>
> . . . .
>
> Q. All right. Now, your plea agreement provides the following, that the government will not exercise its right to request the death penalty but will join with you in requesting the Court to impose the alternative sentence of life imprisonment without possibility of release. And your agreement is that you will be sentenced to life without possibility of release. . . .
>
> This petition is offered then under the provisions of Rule 11(c)(1)C) of the Federal Rules of Criminal Procedure in which the plea agreement itself requires a specific sentence as the appropriate disposition of the case. Let me go on then. That was part two of your agreement.
>
> Part three, Mr. Cable, is that you waive your right to appeal this sentence and you waive any right to collateral attack upon the sentence except for any issues that might be based upon prosecutorial misconduct or ineffective assistance of counsel. Do you understand that?
>
> A. Yes.

(Tr. 7:11–9:5.)

The Court went on to confirm that no leniency had been promised to Cable to persuade him to plead guilty, nor had he been subject to any physical or psychological pressure to induce him to plead guilty. (*Id.* at 9:10–23.) Finally, after hearing the government's statement of the proof it would have put on to prove the crimes charged, Cable admitted in open court that he had entered into an agreement with a co-defendant to cross state lines to kill a federal witness, that he had traveled from Alabama to Tennessee in furtherance of that conspiracy, and that he had in fact killed the witness, knowing that one of his co-defendants had seen her talking to a police officer and was afraid she would tell on him. Upon an unequivocal question from the Court, Cable expressly confirmed that he was pleading guilty to Counts One and Three of the indictment because he was in fact guilty of the those crimes and that he personally had murdered the victim. (*Id.* at 18:1–6)

3

Case 3:09-cv-00593   Document 5   Filed 08/10/09   Page 3 of 6 PageID #: 49

Based upon these representations, the applicable law, and the defendant's attorneys' agreement to waive as irrelevant and unnecessary a presentence investigation and preparation of a presentence report, the Court sentenced Cable to life imprisonment without possibility of release.

Now, however, Cable brings this § 2255 motion, accompanied by an affidavit in which he makes a number of assertions that are flatly contradicted by the statements he made during the prior criminal proceedings. First, he states "upon his own recollection" that he made an "open plea of guilty without the benefit of a plea agreement." (Civ. Doc. No. 1, at 3.) That recollection, as evidenced by the recitation of facts set forth above, is simply wrong: He did have the benefit of a plea agreement. Notwithstanding, based upon that erroneous recollection, Cable further asserts that by pleading guilty, he did not waive his ability to appeal his sentence. That claim is also flatly contradicted by the terms of the plea agreement, the Petition to Enter a Plea, and Cable's statements made in open court in response to questioning by this Court, in which he expressly acknowledged that he was waiving his right to appeal his sentence.

Cable further contends that he received ineffective assistance of counsel, not only because his attorneys purportedly ignored his directions to appeal his sentence, but also because they allegedly disregarded his presentencing suggestions that they "confront[] his co-conspirator [and] disqualify[] him as a supportive witness for the prosecution." (*Id.* at 5–6.) Cable's purported belief that his attorneys had appealed his sentence was unreasonable by any standard. Even if Cable had not unambiguously waived his right to appeal, there was simply nothing to appeal: He understood at the time of his plea that the result of that plea would be a sentence of life imprisonment without possibility of release, and that the Court had no choice, under Fed. R. Crim. P. 11(c)(1)(C), but to enter that sentence. Moreover, Cable testified at the Plea and Sentencing Hearing that he was entirely satisfied with his lawyers' representation of him through the time of his sentencing, and had "no complaint whatsoever" of the way they had conducted his defense up to that point. In addition, this Court is very familiar with both Mr. Redick and Mr. Bloom. They are both highly competent and experienced criminal defense lawyers. They would not have told Cable they were filing an appeal and then simply neglected to do so, particularly when, as here, Cable had clearly waived his right to appeal his sentence and there was nothing from which to appeal. For all of these reasons, Cable's claim now that his attorneys had failed to follow his instructions prior to or after the sentencing is not remotely credible.

Similarly, Cable's contention that he found out about one of his co-conspirators receiving a sentence of twenty years after the plea hearing and before his sentencing is also refuted by the record, as there was no lapse of time in Cable's case between his plea and his sentencing. As set forth above, at the request of both parties, a presentence report was waived since the statutory minimum was the agreed-upon disposition and the sentence was imposed immediately after the plea.

Cable further reasons that had the Court heard evidence from his co-conspirator and other mitigating evidence, "there might have been, and especially today, would of (sic) resulted in a different decision or sentence." (Civ. Doc. No. 1, at 10.) To the contrary, as previously indicated, no amount of mitigating evidence would have made any difference. The offences to which Cable pleaded guilty carry a statutory mandatory minimum sentence of life without possibility of release, and a maximum penalty of death. The Court, in any event, was constrained by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure to apply the sentence to which the parties had agreed as part of the Plea Agreement. In short, the petitioner bargained for and received the statutory minimum. He alludes to the subsequently decided Supreme Court decision in *Booker*, which has no application to statutorily mandated minimum penalties and would have no bearing on this case even if it were retroactive in its effect.

Finally, Cable attempts to explain his ten-year delay in filing this petition by alleging that he thought he could not file a § 2255 motion while his direct appeal was pending, and he believed for a year after his sentencing that his attorneys had followed his instruction to file an appeal. As set forth above, Cable's assertion that he directed his attorneys to file an appeal is totally lacking in credibility. Regardless, even if Cable actually believed for a year following his sentencing that he had an appeal pending, that does not explain why he waited another ten years before filing this petition.

28 U.S.C. § 2255 provides an important protection against the miscarriage of justice. This Court takes petitions filed thereunder very seriously. Because the remedy provided by the provision had been abused, Congress limited its use to one year after a sentence becomes final unless equitable tolling applies. Nothing in this case would justify such tolling. Donald Cable committed one of the most heinous crimes imaginable: murder for hire of a grand jury witness to prevent her testimony. The murder itself was gory: The victim was shot twice, once under the right eye and once in the hand; she was stabbed

nine times with a butcher knife.  Cable admitted in open court under oath that he himself inflicted the bullet and stab wounds upon the victim.  There has been no miscarriage of justice in this case.

In short, Cable's petition is frivolous and totally lacking in credibility.  No hearing is necessary.  Cable's petition under § 2255 (Civ. Doc. No. 1) is **DENIED** and the Government's Motion to Dismiss the petition (Doc. No. 3) is **GRANTED**.  This matter is **DISMISSED**.

It is so **ORDERED**.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge